UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

SHERI BUTLER BROCKINGTON,

     Plaintiff,

v.

SWEET EMMALINE CHEESECAKES
FRANCHISE, LLC,

     Defendant.

No. 1:26-cv-00065-TRM-MJD

---

## DEFENDANT SWEET EMMALINE CHEESECAKES FRANCHISE, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Sweet Emmaline Cheesecakes Franchise, LLC ("Sweet Emmaline") files this memorandum of law in support of its Motion to Dismiss. As demonstrated herein, the Complaint fails to state a claim under the Telephone Consumer Protection Act ("TCPA"), and as such, this Court should grant Defendant's instant Motion and dismiss this matter with prejudice.

## I. INTRODUCTION

Plaintiff's Complaint rests solely on a private right of action under the TCPA, but that right is expressly limited to persons who receive "more than one *telephone call*" within a specified period. *See* 47 U.S.C. § 227(c)(5) (emphasis added); Compl. ¶¶ 40–44 (asserting claims based on § 227(c) of the TCPA). That private right of action is unavailable here because Plaintiff does not allege that she ever received even one "telephone call" from Sweet Emmaline. Instead, she solely alleges she received *text messages* on two dates. (Compl. ¶¶ 19–20). Text messages are not telephone calls. Because Plaintiff does not allege that she received a "telephone call," she fails to state a claim under the TCPA. The Complaint thus should be dismissed with prejudice.

## II. FACTUAL BACKGROUND

Plaintiff did not acquire her current telephone number, 423-718-XXXX, until December of 2023, but she alleges that the number had been on the National Do Not Call Registry ("DNCR") since 2013. (Compl. ¶¶ 14, 15).[1] On June 12, 2024 and March 15, 2025, Plaintiff received text messages from Sweet Emmaline. *Id.* ¶ 19. These text messages included the option, "Text STOP to opt out." *Id.* ¶ 20.[2]

> Plaintiff seeks to represent a putative class of:
>
> All persons throughout the United States (1) who did not provide their telephone number to Sweet Emmaline . . . , (2) to whom Sweet Emmaline . . . delivered, or caused to be delivered, more than one voice message or text message within a 12-month period, promoting Sweet Emmaline . . . goods or services, (3) where the person's residential or cellular telephone number had been registered with the National [DNCR] for at least thirty days before Sweet Emmaline . . . delivered, or caused to be delivered, at least two of the voice messages or text messages within the 12-month period, (4) within four years preceding the date of this complaint and through the date of class certification.

*Id.* ¶ 22. While this class definition then also refers to "voice message[s]," Plaintiff does not allege that she ever received any "voice message" from Sweet Emmaline. Plaintiff also does not allege any basis for knowledge that any other individual (let alone so many to make joinder impracticable) (1) did not provide his or her number or otherwise opt in to receiving text messages from Sweet Emmaline, (2) received a text message from Sweet Emmaline, and (3) had registered on the DNCR at least 30 days before receiving the text message.

Plaintiff claims that Sweet Emmaline violated Section 227 of the TCPA "by making telemarketing *calls*" and that she and other putative class members are entitled to between $500

---

[1] Plaintiff does not allege whether or not the prior owner of the number, while on DNCR, had opted into receiving text messages from Sweet Emmaline.

[2] Plaintiff does not allege whether or not (1) she took advantage of the "Text STOP to opt out" option or (2) Sweet Emmaline acted immediately to ensure that it would not send her any text messages upon learning in any way that she did not want to receive them.

and $1,500 in damages "for each *call* made." *Id.* ¶¶ 41, 43 (emphasis added). Plaintiff, though, does not allege that she ever received any "calls" from Sweet Emmaline.

### III. STANDARD OF REVIEW

"A complaint will be dismissed pursuant to Rule 12(b)(6) if no law supports the claim, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561–64 (2007)). Allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *Id.* (quoting *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)). "To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (dismissal is required where the allegations do not "plausibly give rise to an entitlement to relief").

While a court must accept as true all well-pleaded factual allegations and construe them in the plaintiff's favor, it "need not . . . accept as true legal conclusions or unwarranted factual inferences." *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006) (citing *Gregory v. Shelby County,* 220 F.3d 433, 446 (6th Cir.2000)). "'[N]aked assertions devoid of further factual enhancement' contribute nothing to the sufficiency of the complaint." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678); *see also Davis v. Anderson*, 2021 WL 5743745, at *3–4 (N.D. Ohio Dec. 2, 2021).

## IV.    ARGUMENT

**A.    Plaintiff's TCPA Claim Fails Because It Relates to Texts, Not Calls; Section 227(c) Does Not Apply to Text Messages by its Plain Language.**

The Court should dismiss Plaintiff's claim because the Complaint is based on text messages, not telephone calls, and Section 227(c) does not make texts actionable. As another district court within the Sixth Circuit recently ruled, Congress enacted the TCPA to restrict unsolicited telemarketing calls, not text messages. *See Stockdale v. Skymount Prop. Grp., LLC*, No. 1:25 CV 1282, 2026 WL 591842, at \*2–4 (N.D. Ohio Mar. 3, 2026). The TCPA prohibits, in relevant part, "initiat[ing] any ***telephone call*** to any residential telephone line using an artificial or prerecorded ***voice*** to deliver a message without the prior express consent of the ***called party*** . . . ." 47 U.S.C. § 227(b)(1)(B) (emphasis added). It also creates "a private right of action for a person to seek damages if she has 'received more than ***one telephone call*** within any 12-month period by or on behalf of the same entity in violation of regulations prescribed under the [TCPA].'" *Stockdale*, 2026 WL 591842, at \*2 (quoting 47 U.S.C. § 227(c)(5)).

"As with any question of statutory interpretation, [a court's] analysis begins with the plain language of the statute." *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009). Where a term is not "otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979) (citation omitted); *see also McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 155 (2025) (directing courts to follow "ordinary principles of statutory construction" to determine a statute's meaning and noting courts "are not bound by [an] agency's interpretation[.]"). The TCPA does not define "telephone call" as used in Section 227(c), the provision creating a private right of action under the TCPA. *Id.* Section 227(c) also says nothing about ***text messages***. A text message is not a "telephone call." Indeed,

text messages did not exist in 1991 when Congress enacted the TCPA.[3] *See, e.g.*, *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024) ("[E]very statute's meaning is fixed at the time of enactment." (quoting *Wisconsin Central Ltd. v. United States*, 585 U.S. 274, 284 (2018)).

As the court in *Stockdale v. Skymount Prop. Grp., LLC* noted, when Congress enacted the TCPA, "Webster's Dictionary defined the noun 'call' as 'the act of calling on the telephone' and 'telephone' as 'an instrument for reproducing sounds at a distance' . . . 'one in which sound is converted into electrical impulses for transmission by wire.'" 2026 WL 591842, at *3 (quoting Merriam-Webster New Collegiate Dictionary (9th ed. 1990)). Therefore, "[u]nder these definitions, 'telephone call' could not include modern-day text messages because text messages do not use a telephone to reproduce sounds at a distance." *Id.* Simply put, text messages and telephone calls are fundamentally different, and the TCPA does not apply to text messages. *Id.*

Since the Supreme Court in the landmark decisions of *Loper Enterprises v. Raimondo* and *McLaughlin Chiropractic Associates., Inc. v. McKesson Corp.* directed courts to focus on the plain language of statutes, a growing chorus of courts has ruled that Section 227(c)(5) does not apply to text messages since it only refers to "telephone calls." *See Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 901–02 (C.D. Ill. July 21, 2025) (dismissing TCPA claims based on text messages after finding Section 227(c) clearly refers to telephone calls, not texts); *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1275–76 (N.D. Fla. Aug. 26, 2025) (same); *Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-CV-00846-SDM-CPT, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025) (same); *Radvansky v. Kendo Holdings, Inc.*, No. 3:23-CV-00214-LMM, 2026 WL 810929, at *3 (N.D. Ga. Feb. 12, 2026) (same in a case filed by Plaintiff's counsel);

---

[3] Rose Eveleth, *The First Text Message, Sent Twenty Years Ago, Was 'Merry Christmas'*, SMITHSONIAN MAGAZINE (2012), https://www.smithsonianmag.com/smart-news/the-first-text-message-sent-twenty-years-ago-was-merry-christmas-152311567.

5

*Radvansky v. 1-800-Flowers.com, Inc.*, No. 1:25-cv-2811-TWT, 2026 WL 456919, at *2-4 (N.D. Ga. Feb. 17, 2026) (same in a case filed by Plaintiff's counsel); *Lopresti v. Nouveau Essentials Mktg., LLC*, No. 5:25-CV-00282-CEM-PRL, 2026 WL 964758, at *5 (M.D. Fla. Feb. 26, 2026) (same); *Richards v. Fashion Nova, LLC*, No. 1:25-CV-01145-TWP-MKK, 2026 WL 847568, at *5 (S.D. Ind. Mar. 26, 2026) (same in a case filed by Plaintiff's counsel); *Richards v. Shein Distribution Corp.*, No. 1:25-CV-01385-TWP-TAB, 2026 WL 847584, at *4 (S.D. Ind. Mar. 26, 2026) (same in a case filed by Plaintiff's counsel); *James v. Smarter Contact, Inc.*, No. 8:25-CV-1657-KKM-SPF, 2026 WL 879244, at *5 (M.D. Fla. Mar. 31, 2026) (same); *Irvin v. Sonic Indus. Servs., LLC*, No. 3:25-CV-00242-LMM, 2026 WL 1098403, at *3 (N.D. Ga. Apr. 20, 2026) (same in a case filed by Plaintiff's counsel).

The conclusion that Section 227(c)(5)'s use of the phrase "telephone call" does not include text messages is reinforced by Congress's later addition of "text message" or "text messaging service" elsewhere in the TCPA. *James*, 2026 WL 879244 at *4 (citing 47 U.S.C. § 227(e)(8)(A)– (B)). As one district court explained, "[w]hen Congress uses different terms, we expect that they hold different meanings, especially when the same meaning would render one of the terms superfluous." *Id.* Congress's decision to add text-message related language elsewhere in the statute, but not to Section 227(c)(5), confirms that a private right of action does not extend to texts. *Id.* Regardless, courts are "bound by the clear, plain language of the statute." *Stockdale*, 2026 WL 591842, at *4 n.7. The plain language of Section 227(c)(5) addresses calls, not texts, so the analysis ends there. *Id.* ("Where, as here, the language of the statute is clear, the Court's analysis stops.") (citing *United States v. Choice*, 201 F.3d 837, 840 (6th Cir. 2000)).

Plaintiff's claim thus fails. The plain meaning of Section 227(c)(5) leaves no room for her theory. In 1991, and still today, the phrase "telephone call" did not and does not mean text message.

6

Plaintiff also does not allege that Sweet Emmaline ever used "an artificial or prerecorded *voice* to deliver a message." *See* 47 U.S.C. § 227(1)(B) (emphasis added). The TCPA provides a private right of action under Section 227(c)(5) for telephone calls, not texts. Plaintiff's Complaint fails to state a claim related to telephone calls and therefore should be dismissed with prejudice.

Further, Plaintiff does not allege that she or any other putative class member received a "voice message" or "telemarketing calls" from Sweet Emmaline, as referred to in her proposed class definition and claim for damages. (Compl., ¶¶ 22, 41, 42). For that matter, Plaintiff does not allege any basis for knowledge that any other individual (1) did not provide his or her telephone number or otherwise opt in to receiving text messages from Sweet Emmaline, (2) received a text message from Sweet Emmaline, and (3) had registered his or her number on the DNCR at least 30 days before receiving the text message. As Plaintiff acquired a phone number that previously had been assigned to another user, and she does not allege whether or not the previous user had opted into receiving text messages from Sweet Emmaline, her circumstances are singularly unique.[4]

---

[4] *See Brockington v. Hume Health, LLC*, No. 3:25-cv-161-KAC-DCP, 2026 WL 1284850 (E.D. Tenn. May 11, 2026) (denying Plaintiff Brockington's request to delay ruling on defendant's motion for summary judgment on the basis that she had opted into receiving messages); *Brockington v. Eden Brands Inc.*, No. 1:25-cv-02881-GHW (S.D. N.Y.); *Brockington v. MoneyLion Technologies Inc.*, No. 1:25-cv-03453-GHW-BCM (S.D.N.Y.); *Brockington v. Waypoint Resource Group, LLC*, No. 2:25-cv-01983-JSM (E.D. Pa.); *Brockington and McGonigle v. Perpay, Inc.*, No. 2:25-cv-00326-JMY (E.D. Pa.); *Brockington v. Yoli, LLC*, No. 3:25-cv-00159-KAC-JEM (E.D. Tenn.); *Brockington v. Dusk USA, LLC*, No. 3:25-cv-00160-KAC-DCP (E.D. Tenn.); *Brockington v. Holistic Choice Labs LLC*, No. 1:26-cv-00064-TRM-CHS (E.D. Tenn.); *Brockington v. Bambu Earth, LLC*, No. 1:26-cv-00074-TRM-MJD (E.D. Tenn.); *Brockington v. Maple Coverage LLC*, No. 3:26-cv-00228-TAV-JEM (E.D. Tenn.); *Brockington v. Countryside Rentals, Inc.*, No. 3:26-cv-00249-KAC-DCP (E.D. Tenn.); *Brockington v. Second Chance Advocate LLC*, No. 1:26-cv-00041-CEA-CHS (E.D. Tenn.) (asserting TCPA claims based on messages to a phone number that Plaintiff Brockington had acquired).

7

**B.** **The Plain Language of the TCPA Contradicts Any FCC Regulations or Guidance that Consider a Text Message a Call Under the TCPA.**

Although the FCC (during a prior administration) opined that its regulations under Section 227(c) cover texts, this opinion is irrelevant. As noted, the plain language of Section 227(c) dictates a private action exists for "telephone call[s]" alone, not text messages. As the court in *Stockdale*, ruled, that is what controls.

The court in *Stockdale* followed explicit instructions from the Supreme Court that redefined how courts should consider agency guidance when interpreting statutes. *Id.* (citing *Loper Bright Enters.*, 603 U.S. at 369 and *McLaughlin Chiropractic Assocs.*, 606 U.S. at 146). In the wake of this sea change, courts **must** apply statutes' plain meaning, rather than defer to any contrary interpretations from federal regulatory agencies. *See McLaughlin Chiropractic Assocs.*, 606 U.S. at 155, 168–69; *Loper Bright*, 603 U.S. at 388–89. Thus, the Court must rely on the plain language of Section 227(c)(5) rather than any agency's interpretation of the TCPA that contradicts the TCPA's plain language. These Supreme Court decisions also toppled the house of cards supporting any cases that cited FCC guidance in recognizing a private right of action based on text messages.

Succinctly, both in 1991 and today, the ordinary meaning of "telephone call" was and remains a voice call. It is up to Congress, not any agency, to rewrite the TCPA to say otherwise. *See Loper Bright*, 603 U.S. at 369; *McLaughlin Chiropractic Assocs.*, 606 U.S. at 146. Dismissal is appropriate, given Plaintiff's entire Complaint is based on text messages rather than calls and the plain language of Section 227(c)(5) of the TCPA does not cover text messages.

## V. CONCLUSION

For the foregoing reasons, Sweet Emmaline respectfully asks this honorable Court to dismiss Plaintiff's Complaint with prejudice because it fails to state a claim upon which relief can be granted under the TCPA.

Respectfully submitted,

MILLER & MARTIN PLLC

By:   */s/ Bradford G. Harvey*
       Bradford G. Harvey, BPR No. 17393
       J. Andrew Whitten, BPR No. 40215

Suite 1200, Volunteer Building
832 Georgia Avenue
Chattanooga, TN 37402
Telephone: (423) 756-6600
Facsimile: (423) 785-8480
Email: brad.harvey@millermartin.com
       andrew.whitten@millermartin.com

*Attorneys for Defendant Sweet Emmaline Cheesecakes*
*Franchise, LLC*

9

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 8, 2026, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
anthony@paronichlaw.com

By: */s/ Bradford G. Harvey*
Bradford G. Harvey

10