UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

SHERI BUTLER BROCKINGTON,

     Plaintiff,

v.

SWEET EMMALINE CHEESECAKES
FRANCHISE, LLC,

     Defendant.

No. 1:26-cv-00065-TRM-MJD

---

**DEFENDANT SWEET EMMALINE CHEESECAKES FRANCHISE, LLC'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

---

Plaintiff's Opposition does not cure the Complaint's fatal defect; it confirms it. She only alleges she received two **text messages** but not a "telephone call" within the meaning of 47 U.S.C. § 227(c)(5)—the sole provision of the Telephone Consumer Protection Act ("TCPA") under which she brings a claim. This Section authorizes suit only by a person who received "more than one telephone call" within 12 months. Plaintiff attempts to divert the Court from the statutory text by invoking inapposite, outdated cases, policy arguments, and generalized appeals to technological change. None of that, however, can supply a cause of action that Congress did not create.

## I.     ARGUMENT

### A.     Plaintiff Tries to Contort the Impact of *Loper Bright* and *McLaughlin*.

The Supreme Court ushered in a sea change by ruling that "[d]istrict courts are not bound by the agency's interpretation but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation."

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 155 (2025) (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 402 (2024)).

Turning the Court's instruction on its head, Plaintiff argues that *stare decisis* "forecloses new challenges" to pre-*Loper Bright* cases, even where those cases contravened the "plain meaning" of a statute. (Doc. 15, PageID # 69). She cites *Tennessee v. Becerra*, 131 F.4th 350 (6th Cir. 2025) in support of this novel concept, but that case simply observed that "we cannot say that *Loper-Bright* **requires** us to find that" a court had wrongly relied on cases citing an agency interpretation. *Id.* at 366 (emphasis added). Similarly, the concurrence in *Bastias v. U.S. Att'y Gen.,* 158 F.4th 1188, 1194 (11th Cir. 2025), merely held that *Loper Bright* alone does not **require** a court to overrule a prior case. What *Loper Bright* does **require** is for courts strictly to apply the "plain language" of statutes, rather than blindly deferring to contrary agency interpretations, or old cases that rested on those interpretations like a deck of cards.

## B.     The "Plain Meaning" of § 227(c) Does Not Include Text Messages.

Plaintiff asserts, without citing specific cases, that a "majority of courts have concluded that under the TCPA text messages are calls." (Doc. 15, PageID # 61). The opposite is true. Since *Loper Bright,* at least 12 courts and counting have found text messages are not actionable under Section 227(c)(5).[1] Alternatively, Plaintiff cites nine post-*Loper Bright* cases (including three from

---

[1] *See Stockdale v. Skymount Prop. Grp.*, No. 1:25 CV 1282, 2026 WL 591842, at *3 (N.D. Ohio Mar. 3, 2026); *Jones v. Blackstone Med. Servs.,* 792 F. Supp.3d 894, 901–02 (C.D. Ill. July 21, 2025); *Davis v. CVS Pharmacy*, 797 F. Supp.3d 1270, 1275–76 (N.D. Fla. Aug. 26, 2025); *Sayed v. Naturopathica Holistic Health*, No. 8:25-CV-00846-SDM-CPT, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025); *Radvansky v. Kendo Holdings*, No. 3:23-CV-00214-LMM, 2026 WL 810929, at *3 (N.D. Ga. Feb. 12, 2026) (same); *Radvansky v. 1-800-Flowers.com, Inc.*, No. 1:25-cv-2811-TWT, 2026 WL 456919, at *2-4 (N.D. Ga. Feb. 17, 2026); *Lopresti v. Nouveau Essentials Mktg*, No. 5:25-CV-00282-CEM-PRL, 2026 WL 964758, at *5 (M.D. Fla. Feb. 26, 2026); *Richards v. Fashion Nova*, No. 1:25-CV-01145-TWP-MKK, 2026 WL 847568, at *5 (S.D. Ind. Mar. 26, 2026); *Richards v. Shein Distribution Corp.*, No. 1:25-CV-01385-TWP-TAB, 2026 WL 847584, at *4 (S.D. Ind. Mar. 26, 2026); *James v. Smarter Contact*, __ F. Supp.3d __, No. 8:25-CV-1657-KKM-SPF, 2026 WL 879244, at *5 (M.D. Fla. Mar. 31, 2026); *Irvin v. Sonic Indus. Servs.*, No. 3:25-

the Ninth Circuit and none from the Sixth Circuit) that have found text messages constitute a

"telephone call" under § 227(c)(5).[2]

The cases still applying § 227(c)(5) to text messages sidestep the TCPA's text and rely on reasoning that does not comport with ordinary tools of statutory interpretation after *Loper Bright*. By contrast, the majority view has explained why those cases miss the mark. Within the Sixth Circuit, the court in *Stockdale* explained:

> Plaintiff cites several courts that have found that the plain meaning of "telephone call" includes text messages. This Court respectfully disagrees with the textual analyses undertaken by these courts. First, several based their analyses on a dictionary definition of "call" from 2002—or later. *E.g.*, *Mujahid*, 2025 WL 3140725, at *2 (referencing definition from 2002); *Wilson v. MEDVIDI Inc.*, 2025 WL 2856295, at *2 (N.D. Cal. Oct. 7, 2025) (referencing definition from 2024). Second, several others relied on definitions of "call" contemporaneous with the TCPA's enactment but failed to consider the contemporaneous definition of the modifying "telephone." *E.g.*, *Wilson v. Better Mortgage Corp.*, 811 F. Supp.3d 631, 637-38 (S.D.N.Y. 2025); *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1123–24 (9th Cir. 2026).
>
> While one district court in the Southern District of Texas did address contemporaneous definitions of both "call" and "telephone," this Court is not convinced by its further analysis that found those definitions include text messages. *Alvarez v. Fiesta Nissan, Inc.*, 2026 WL 202930, at *4–5 (S.D. Tex. Jan. 26, 2026). After noting the appropriate definitions, the court based its analysis on a comparison of "telephone" in 1991 with "cell phone" today . . . . While a modern cell phone has capabilities that bring the device within the 1991 definition of "telephone," that is

---

CV-00242-LMM, 2026 WL 1098403, at *3 (N.D. Ga. Apr. 20, 2026); *Royal v. Georgia CVS Pharmacy,* No. 1:26-CV-01357-ELR, 2026 WL 1537161, at *2-3 (N.D. Ga. May 8, 2026).

[2] *See Harriel v. Bealls, Inc.*, No. 8:25-CV-1165-TPB-SPF, 2025 WL 2379617, at *2 (M.D. Fla. Aug. 15, 2025); *Esquivel v. Mona Lee, Inc.*, No. 3:25-CV-00607-H-BLM, 2025 WL 3275607, at *3 (S.D. Cal. Nov. 24, 2025); *Wilson v. Skopos Fin.*, No. 6:25-CV-00376-MC, 2025 WL 2029274, at *4 (D. Or. July 21, 2025); *Wilson v. MEDVIDI Inc.*, No. 5:25-CV-03996-BLF, 2025 WL 2856295, at *2 (N.D. Cal. Oct. 7, 2025); *Wilson v. Better Mortgage Corp.*, 811 F. Supp.3d 631, 637-38 (S.D.N.Y. 2025); *Rabbitt v. Rohrman Midwest Motors*, No. 25 C 11312, 2026 WL 851279, at *3 (N.D. Ill. Mar. 27, 2026); *Alvarez v. Fiesta Nissan*, 2026 WL 202930, at *4–5 (S.D. Tex. Jan. 26, 2026); *Mujahid v. Newity*, 2025 WL 3140725 (N.D. Ill. Nov. 10, 2025); *Rubin v. Staples*, No. 2:25-15515 (WJM), 2026 WL 881651, at *6 (D.N.J. Mar. 31, 2026). The U.S. Court of Appeals for the Fourth Circuit recently took the extraordinary step of accepting an interlocutory appeal and vacated the lower court decision Plaintiff cited in *Mey v. Liberty Home Guard*, 2026 WL 1458995 (W.D. Va. May 5, 2026). That case also involved not just text messages but "approximately 790,000 outbound calls." *Mey v. Liberty Home Guard*, 2025 WL 4348808, at *4 (W.D. Va. Dec. 3, 2025).

not the issue before this Court. The question here is whether "call" as modified by "telephone" in 1991 can include text messages . . . .

In 1991, the definition of telephone was limited to voice capabilities. [T]he only capability possibly covered by definition of "telephone call" in 1991 was reproducing sound . . . To hold otherwise would suggest that any communication from a modern cell phone is a "telephone call" under the TCPA, which might include messages sent through Internet applications downloaded onto a cell phone. This broad interpretation of "telephone call" is not supported by the term's plain meaning as defined in 1991.

2026 WL 591842, at *3, n.5.

Similarly, the court in *1-800-Flowers.com, Inc.*—a case Plaintiff's counsel filed—was "not persuaded by the several district court decisions the Plaintiff provides concluding 'telephone call' in § 227(c)(5) does include text messages because the reasoning underlying these decisions **is inherently flawed**." 2026 WL 456919, at *4 (emphasis added). The court noted that the *Alvarez* decision admitted that "no ordinary person would use the word 'telephone call' to refer to a text message" before somehow concluding that "a usage which seems obvious now is not always a reflection of the original meaning of the statute[.]" (quoting *Alvarez*, 2026 WL 202930, at *4). The court also explained that the *Mujahid* "court's conclusion that 'interpreting § 227(c) to include text messages is consistent with the text of § 227 as a whole' ignores the meaningful-variation canon—the principle that Congress uses different words to convey different meanings." *Id.*[3]

---

[3] Other cases Plaintiff cites also use flawed and outdated analyses. *See Harriel*, 2025 WL 2379617 at *2 (relying on the "overarching intent and structure of the TCPA" rather than the statute's plain language); *Skopos Fin.,* 2025 WL 2029274 at *4 (not mentioning *Loper Bright* in following FCC guidance); *Rubin,* 2026 WL 881651 at *6 (acknowledging texts and calls are distinct but still treating a text as a call under the TCPA, without considering the contemporaneous definition of "telephone"); *Esquivel*, 2025 WL 3275607 at *3 (relying on a § 227(b) case and not analyzing § 227(c)(5)'s text); *Rabbitt*, 2026 WL 851279 at *3 (overlooking the canon against surplusage, which requires courts to avoid rendering statutory words superfluous). Other cases pre-date *Loper Bright* and therefore rely on a level of deference to agencies' statutory interpretations that is defunct. For example, *Keating v. Peterson's Nelnet*, 615 Fed. App'x 365, 371 (6th Cir, 2015), while affirming summary judgment for the defendants, in *dicta* on an issue that "the defendants d[id] not contest," "unhesitatingly afforded deference to the agency holding that a text message should be treated as a 'call' for purposes of the TCPA."

4

Plaintiff's reliance on the FCC's regulations also falls short. (Doc. 15, PageID # 59). The court in *Stockdale* rejected nearly identical arguments, stating, "Even if this Court were to give deference to the FCC's regulations, several of Plaintiff's arguments still lack merit." 2026 WL 591842, at *4 n.7. The court explained that "Section 64.1200(e) only makes the regulations promulgated under Section 227(c)(5) applicable to persons or entities making telemarketing text messages . . . It **says nothing** as to whether **the person receiving a text message** . . . **has a private right of action under Section 227(c)(5) of the TCPA for text messages**." *Id.* (emphasis added); *see also, e.g.*, *Irvin*, 2026 WL 1098403, at *5 (stating, in a case filed by Plaintiff's counsel, "Plaintiff's claim fails as a matter of law under Rule 12(b)(6) because Section 227(c)(5)'s private right of action is limited to 'telephone call[s],' a term the Court finds does not encompass text messages, contrary to the FCC's interpretation in 47 C.F.R. § 64.1200(e).").

This Court is no longer chained to the FCC's interpretation of "telephone call" but instead must analyze the statute using its own judgment informed by traditional rules of statutory interpretation. *Id.* In doing so, it becomes clear that the plain language of § 227 does not encompass text messages and that Plaintiff therefore has failed to state a claim.

**C.      Plaintiff Cannot Save Her § 227(c)(5) Claim by Referring to § 227(b).**

Plaintiff only asserts a claim under § 227(c) and yet focuses much of her argument on § 227(b), which addresses automated telephone equipment. She leans heavily on the Ninth Circuit's ruling in *Howard*, asserting that it states "the plain meaning of the word 'call' in the TCPA encompasses any 'communication used primarily between telephones,' regardless of whether that 'call' is communicated by 'voice' or 'text message.'" (Doc. 15, PageID # 56 (quoting *Howard*, 164 F.4th at 1129). Misleadingly, though, Plaintiff quotes the dissent, not the majority opinion.

Moreover, *Howard* analyzed § 227(b), and not § 227(c)(5). For several reasons, § 227(b) cannot save Plaintiff's claim under § 227(c)(5).

First, § 227(c) explicitly applies only to "regulations prescribed under ***this subsection*** …." Congress's decision to keep §§ 227(b) and (c) distinct is confirmed by § 227(c)(6), titled "Relation to subsection (b)," which states: "The provisions of this subsection shall not be construed to permit a communication prohibited by subsection (b)." In short, the statute treats the subsections separately, and decisions interpreting § 227(b) do not resolve the meaning of § 227(c)(5).

Second, while Plaintiff cites *Campbell-Ewald Co. v. Gomez*, 577 U.S. 155, 156 (2016), for the proposition that "[a] text to a cellular telephone, it is undisputed, qualifies as a 'call,'" she conveniently ends this quotation before the Court added the limitation "within the compass of § 227(b)(1)(A)(iii)." (Doc. 15, PageID # 61). Even as to § 227(b), this language was *dicta* because "the Supreme Court merely assumed without deciding that 'calls' in Section 227(b) included text messages" as the issue was not contested. *James,* 2026 WL 879244 at *2 n.1 (citing *Better Mortgage Corp.*, 811 F. Supp.3d at 640 (case Plaintiff cites conceding that "the Supreme Court has repeatedly assumed, without resolving, that § 227(b) applies to text messages"); *Davis*, 797 F. Supp.3d at 1273)); *accord Kendo Holdings*, 2026 WL 810929 at *3.

Third, the language in §§ 227(b) and (c) is not in fact "identical." (Doc. 15, PageID # 76). Only § 227(b)(1)(A)(iii) refers to a "call . . . to any telephone number assigned to a paging service." Accordingly, the court in *Fashion Nova* stressed that "the fact that Congress expressly included calls to pagers in § 227(b) only evidences Congress's intent to omit pagers—and their modern analogs—from § 227(c). [The plaintiff] offers no evidence that as of 1991, Congress considered 'telephone calls' to be the same as calls to pagers." 2026 WL 847568 at *3. The court added that:

> Congress highlighted the distinction between §§227(b) and (e), which do include text messages, and § 227(c), which does not, in 2019 when it enacted two TCPA

reporting provisions: §§ 227(h) and (i). [The 2019 amendment] requires the [FCC] call **or a text message sent**" in violation of §§ 227(b) or (e). to submit an annual report to Congress regarding consumer complaints and the enforcement of "calls made" in violation of §§ 227(b), (c), and (e). Section 227(i), by contrast, requires the FCC to prescribe regulations to facilitate the sharing of information about Importantly, these statutory subsections make no mention of a text message sent in violation of § 227(c).

2026 WL 847568 at *3 (emphasis from court); *accord Shein Distr.*, 2026 WL 847584 at **3-4.[4]

Fourth, Plaintiff cites pre-*Loper Bright* § 227(b) cases, which deferred unquestionably to the agency interpretation, rather than zeroing in on the plain language of the statute. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009)); *see also Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 356 (7th Cir. 2020); *see also Howard*, 164 F.4th at 1123–24 (relying on these pre-*Loper Bright* cases in analyzing a claim under § 227(b), not § 227(c)).

Finally, freed by *Loper Bright*, the tide is even starting to turn against § 227(b) claims. *See Royal v. Georgia CVS Pharmacy, LLC*, No. 1:26-CV-01357-ELR, 2026 WL 1537161, at *3 (N.D. Ga. May 8, 2026) ("Under the plain meaning of . . . § 227(b)(1)(A), text messages are not a method of communication that violate the statute's provision."); *Lopesti*, 2026 WL 964758 at **5-6 (dismissing claims under §§ 227(b) and (c) based on text messages).[5]

**D.      TCPA Amendments Confirm that Section 227(c)(5) Does Not Cover Text Messages.**

Plaintiff's Opposition also tries to invert the message from amendments to the TCPA. (*See, e.g.*, Doc. 15, PageID # 68 (quoting *Rabbitt*, 2026 WL 851279, at *4)). The bottom line is that

---

[4] Section 227(b)(1)(C) also refers broadly to using "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement," while § 227(c)(5) only allows a claim based on "telephone call[s]."

[5] Other cases Plaintiff cites concern different statutes or different forms of agency action and are equally irrelevant. *See Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colorado*, 605 U.S. 168, 179–80 (2025) (asking whether specific, discrete agency actions violated the Administrative Procedure Act); *Pickens v. Hamilton-Ryker IT Sols.*, 133 F.4th 575, 587 (6th Cir. 2025) (discussing a different issue under the Fair Labor Standards Act); *Lopez v. Garland*, 116 F.4th 1032, 1036 (9th Cir. 2024) (reviewing an immigration decision by the Board of Immigration Appeals); *Bastias,* 158 F.4th at 1195 (same).

7

Congress knows how to refer to text messages when it wants to. It did so elsewhere in the statute. It did not do so in § 227(c)(5). That omission matters.

First, Congress, through amendments, chose to use the term "text message" in § 227(e) but not in § 227(c). It defined "text message" so that it "does not include—(I) a real-time, two-way voice or video communication." 29 U.S.C. § 227(e)(8)(I). Then, the 2019 reporting provision amendment adopted § 227(e)(8)'s definition of "text message" that excludes calls. 49 U.S.C. § 227(i)(2). As the court in *Fashion Nova* ruled, this amendment "requires the [FCC] to submit an annual report to Congress regarding consumer complaints and the enforcement of "calls made" in violation of §§ 227(b), (c), and (e). Section 227(i), by contrast, requires the FCC to prescribe regulations to facilitate the sharing of information about 'a call **or a text message sent**' in violation of §§ 227(b) or (e). Importantly, these statutory subsections make no mention of a text message sent in violation of § 227(c)." 2026 WL 847568 at *3 (emphasis from court); *accord Shein Distrib.*, 2026 WL 847584 at **3–4.

In rejecting the same argument Plaintiff raises here, the court in *1-800-Flowers.com* ruled that "Congress has amended the TCPA as recently as 2019 to add the phrase 'text message' in a neighboring provision, § 227(e)(8)(C), and **chose** to leave § 227(c)(5) unamended." 2026 WL 456919, at *3–4 (emphasis added). From that, the court concluded that "Congress intended § 227(c)(5) to encompass only telephone calls because 'when a statute uses one term in one place and a distinct term elsewhere, the difference matters—that is, the distinct words have different meanings.'" *Id.* The court also rejected the argument that references to "telephone solicitations" elsewhere in the TCPA collapse the distinction. *Id.* The court reasoned that to "constru[e] these distinct phrases identically would render superfluous the different terms Congress chose to use in each subsection, a result which would violate the canon against surplusage." *Id.*; *see also, e.g.*,

*Davis*, 797 F. Supp.3d at 1274 ("Congress's use of the phrase 'telephone call or message' in a neighboring provision only undermines [the plaintiff's] position. It shows that Congress does not use the term 'telephone call' to encompass all 'messages.'"); *see James v*, 2026 WL 879244, at *5 ("Congress understood the pertinent distinction and legislated mindful of the distinction.").

If Congress wanted § 227(c)(5)'s private right of action to reach text messages, it knew how to say so. It did not. Plaintiff's attempt to graft text messages into Section 227(c)(5) by referencing other provisions or regulatory gloss asks this Court to do what *McLaughlin* forbids: treat agency interpretation as controlling over statutory text. 606 U.S. at 152–53.

Even if the Court accepted Plaintiff's theory about the implications of later amendments, that theory would still not overcome the plain language of § 227(c)(5). As the *Stockdale* court explained, "even assuming Plaintiff is correct . . . this Court is bound by the clear, plain language of the statute." 2026 WL 591842, at *4 n.7. If the text does not reflect Congress's policy preferences, "it is for Congress to correct—not the courts." *Id.* The same is true here. The phrase "text messages" does not appear in Section 227(c)(5). That omission is dispositive.

**E.     Arguments About Evolving Technology Cannot Override the Statutory Text.**

Plaintiff also argues that Congress intended the word "telephone" to be broad enough to accommodate changes in technology. (Doc. 15, PageID # 72). In rejecting this argument, the court in *Stockdale* explained, "Congress can, and often does, enact statutes broad enough to cover future factual situations unimaginable at the time of enactment." *Id.* (citing *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998)). The issue is not whether Congress could have written broader language.[6] *Id.* It is "whether 'call' as modified by "telephone" in 1991 can include text messages."

---

[6] Plaintiff offers the analogy that a 1991 law that refers to "vehicles" would cover Cybertrucks. (Doc. 15, PageID # 56). A Cybertruck, though, is a "vehicle." A "telephone call" was and is not a "text message."

*Id.* (citing *Facebook, Inc. v. Duguid*, 592 U.S. 395, 409, (2021) (courts "must interpret what Congress wrote," even in the face of changing technology)). The court correctly concluded that the term "'telephone call' could not include modern-day text messages[,]" in § 227(c)(5). *Id.* at *3.

## F.      Plaintiff Fails to State a Claim for Class Allegations.

Finally, Plaintiff offers no argument to save her class allegations. She blurs the lines by referring to a "nationwide class of persons who allegedly received more than one telemarketing voice message or text message from Sweet Emmaline while their telephone numbers were registered on the National Do Not Call Registry." (Doc. 15, PageID # 60). Plaintiff, though, omits the critical part of the class definition referring to persons "who did not provide their telephone number to Sweet Emmaline." (Compl., ¶22). Plaintiff does not allege any basis for knowledge that anyone else (let alone so many to make joinder impracticable) (1) did not provide his or her number or otherwise opt in to receiving text messages from Sweet Emmaline, (2) received a text message from Sweet Emmaline, and (3) had registered on the DNCR. As Plaintiff, who has filed at least 12 other TCPA lawsuits since 2025, acquired a phone number that previously had been assigned to another user, and she does not allege whether or not that user had opted into receiving text messages from Sweet Emmaline, her circumstances are singularly unique.

## II.      CONCLUSION

For these reasons, Sweet Emmaline respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice. The Complaint is based solely on text messages, not telephone calls, and therefore fails to state a claim under Section 227(c)(5) of the TCPA. Because that defect is legal rather than factual, amendment would be futile.

Respectfully submitted,

MILLER & MARTIN PLLC

By:     */s/ Bradford G. Harvey*
        Bradford G. Harvey, BPR No. 17393
        J. Andrew Whitten, BPR No. 40215

Suite 1200, Volunteer Building
832 Georgia Avenue
Chattanooga, TN 37402
Telephone: (423) 756-6600
Facsimile: (423) 785-8480
Email:  brad.harvey@millermartin.com
        andrew.whitten@millermartin.com

*Attorneys for Defendant Sweet Emmaline Cheesecakes Franchise, LLC*


## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2026, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
anthony@paronichlaw.com

By:     */s/ Bradford G. Harvey*
        Bradford G. Harvey

11